```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION
```

| | |
|---|---|
| BUCKEYE STATE MUTUAL <br> INSURANCE COMPANY, | ) <br> ) <br> ) |
|     Plaintiff, | ) <br> ) |
| v. | )     No. 1:12-CV-411-PPS <br> ) |
| PHIL ROE and JANET ROE, | ) <br> ) |
|     Defendants. | ) |

**MEMORANDUM, OPINION AND ORDER**

      This case arises out of a terrible tragedy, but has since reduced to a single, narrow legal issue. Phil and Janet Roe lost their son Matthew in a car accident in 2011. In the aftermath of the accident, the Roes were able to collect benefits from all applicable insurance policies save one, an umbrella policy issued to them by Buckeye State Mutual Insurance. Buckeye acknowledges the Roes are entitled to coverage under the policy, but disagrees with the Roes about the amount of money the Roes are entitled to. The underinsured motorist provision of the Buckeye policy provides that Buckeye will pay damages that the Roes are "legally entitled to recover" from the uninsured driver [DE 22-4 at 22]. Buckeye filed this declaratory judgment action seeking a declaration that Indiana law governs the Roes' claim for benefits under the policy, or, in other words, that they only have to pay what the Roes are entitled to recover under Indiana law [DE 1]. The Roes filed a cross-claim seeking a declaration that Buckeye is required to pay the damages they are entitled to under Alabama law [DE 7]. Both parties have moved for summary judgment on their claims [DE 21; DE 23]. Because I agree with the Roes that Alabama law controls, Buckeye's motion for summary judgment [DE 21] is **DENIED** and the Roes' cross-motion for summary judgment [DE 23] is **GRANTED**.

The parties agree on all of the relevant facts [DE 23 at 1]. On March 26, 2011 Matthew Roe, the Roes' teenage son, was a passenger in a friend's car, returning home to Indiana from a spring break trip to Florida. While Matthew and his friends were traveling on I-65 through Alabama, another driver crossed the highway median, striking the car head-on and killing Matthew. The other driver, an Alabama resident, also died in the accident [DE 22 at 3].

At the time of the accident, the Roes were insured by Buckeye, an Ohio-based insurance company. The Roes had two policies with Buckeye, an automobile policy and an umbrella policy. The umbrella policy provides for $2 million in excess underinsured motorist coverage ("UIM") and is the policy at issue in this case [DE 22-4]. The Roes are Indiana residents, and the policy was issued to them in Indiana by an Indiana-based insurance agency [DE 22-2].

After the accident, the Roes brought a claim against the Alabama driver's insurer, which promptly paid out its limits of insurance [DE 22-2 at 2]. The Roes next sought UIM coverage under their Buckeye auto policy, and Buckeye paid its limits of insurance under that policy [*Id.*]. The Roes then sought the additional UIM coverage under the umbrella policy, and this lawsuit ensued [DE 1 at 3].

In their complaint for declaratory judgment, Buckeye acknowledges that the policy provides coverage for the Roes, but asserts that the parties disagree over how much the Roes are entitled to collect [DE 1 at 2-3]. The disagreement boils down to a question of the applicable state law. Here's what the relevant policy language provides:

> "'[w]e' will pay, up to 'our' 'limit', all sums which an 'insured' is legally entitled to recover for 'bodily injury' under uninsured/underinsured motorists coverage, but only to

the extent that 'bodily injury' is covered by 'underlying uninsured/underinsured

motorists coverage' at the time of the occurrence. . ."

[DE 22-4 at 22].

Buckeye argues that Indiana's Child Wrongful Death Act governs the amount of money the Roes are "legally entitled to recover" for Matthew's death and seeks a declaration that Indiana law governs the claim for damages. This is a curious argument since the accident occurred in Alabama. There can be no question that had the driver of the other car been fully insured, the Roes could have brought an action against him in Alabama, and Alabama law would have certainly applied to that hypothetical lawsuit. It is for this reason that the Roes argue that Alabama's wrongful death law governs. The parties have reached an agreement whereby my decision – Indiana law versus Alabama law – will determine how much Buckeye pays out to the Roes to settle this claim.

The Declaratory Judgment Act states: "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). For purposes of determining whether a court should entertain a declaratory judgment action, an "actual controversy" exists when "the facts alleged under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In this case, the parties have shown that there is an actual controversy as the Roes have a pending claim for coverage under the policy. *See, e.g., Northland Ins. Co. v. Gray*, 240 F. Supp. 2d 846, 848 (N.D. Ind. 2003)

3

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Interpretation of an insurance policy is a question of law appropriate for summary judgment. *National Athletics Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Here there are no remaining factual issues. The sole issue to decide is the applicable substantive law.

Buckeye argues that this case essentially involves interpreting an insurance contract, so the court should apply contract choice-of-law rules. Under Indiana's contract choice-of-law rules, the law of the place where an insurance contract was executed controls. *Pennington v. Continental Ins. Co.*, 626 N.E.2d 461, 465 (Ind. Ct. App. 1993). Here, that would be Indiana. On the other hand, the Roes argue that what they are "entitled to recover" depends on applicable tort law, not contract law. And there is a strong presumption that the law of the place where the tort occurred – Alabama in this case – controls. *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987).

Buckeye is correct that Indiana law governs the interpretation of the insurance contract, but here there is no need for interpretation. The contract provision at issue could not be any clearer: the policy's UIM endorsement obliges Buckeye to pay to the Roes all sums the Roes are "legally entitled to recover" for Matthew's death [DE 1 at 26]. If the parties had a dispute over the policy language, such as over whether the Roes qualified as "insureds" under the policy, then Indiana law would govern. But the parties agree on the interpretation of the relevant provision. They disagree on its application – on the actual amount of money the Roes are legally entitled to

4

recover, and therefore the amount of money Buckeye is required to pay.

The amount the Roes are entitled to recover can only be determined by reference to the applicable tort law. In other words, the question is whether the Roes would be "legally entitled" to collect damages under Alabama law? The answer is unquestionably yes. As alluded to above, if the Roes had brought a lawsuit against the underinsured driver of the other car, they could have filed that lawsuit in Alabama, and in that hypothetical lawsuit, Alabama law would have applied. Consequently, the Roes are "legally entitled" to the damages that Alabama affords tort victims, not the more stingy damages that Indiana provides.

The parties have chosen to argue this case as if it was a choice of law issue. I'm not sure I agree with that. I view the matter as a straight-forward contract interpretation matter, and under the plain meaning of this insurance contract, the Roes would be entitled to recover damages under Alabama law. But even if I delve into the choice of law question, the Roes still prevail.

In a diversity case like this one, the forum state's choice of law rules determine the applicable law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). So Indiana's choice of law rules apply to determine which state's law governs the Roes' claims. There is no Indiana case directly on-point. The Roes' rely on *Cox by Zick v. Nichols*, 690 N.E.2d 750 (Ind. Ct. App. 1998), but this case provides only limited guidance. *Cox by Zick* involves essentially the same policy language and same material facts as this case, but the *Cox by Zick* court declines to choose between tort choice of law rules or contract choice of law rules as the outcome in that case was the same under either approach. *Id.* at 752. Buckeye relies on *Trosky v. Cincinnati Insurance Company*, 918 N.E.2d 1 (Ind. Ct. App. 2009) where the court

applied Indiana's contract choice-of-law principles to decide the question of which state's law governed what the insured was entitled to recover. *Id.* at 7. However, *Trosky* is not determinative because the court's decision to use contract choice of law rules was impelled by the substantive contract interpretation dispute that was the primary issue in the case. *Trosky* involved two issues: one was how much the insured was legally entitled to recover, and the other issue was whether the tortfeasor qualified as an "underinsured motorist" under the policy. *Id.* at 6. This second issue is a straightforward contract interpretation issue and occupies the vast majority of the court's attention, driving the decision to apply the contract choice of law rules. *Id.* at 6-10 Since the instant case doesn't involve a similar contract interpretation issue, and the *Trosky* court neglected to differentiate the contract issue from the damages issue, *Trosky*, too, offers limited guidance.

More persuasive are the cases from other states, cited by both parties, in which courts consistently hold that tort choice-of-law rules should be used to determine the law governing what an insured is legally entitled to recover. *See Erie Ins. Exchange v. Heffernan*, 925 A.2d 636, 648 (Md. Ct. App. 2007) (applying Maryland's tort choice of law rules to determine which law controlled what the insured was legally entitled to recover as uninsured motorists benefits from Delaware accident); *Syed Shah v. State Farm Mut. Auto Ins. Co.*, 377 F. Supp. 2d 748, 757 (D.N.D. 2005) (holding North Dakota's tort choice of law rules required the application of North Dakota law to determine what the insured was legally entitled to recover as uninsured motorists benefits for accident in Manitoba); *State Farm Mut. Auto Ins. Co. v. Gillette*, 251 Wis.2d 561, 587 (Wis. 2002) (holding that to determine the amount of damages a Wisconsin insured was legally entitled to recover for an accident in Manitoba, the court "must apply all of Wisconsin

law, including Wisconsin tort choice of law rules"); *Aetna Cas. & Surety Co. v. Holland,* Civ A. 96-0163, 1997 WL 736518 at *3-4 (Mass. Super. Ct. Nov. 18, 1997) (applying Massachusetts tort choice of law principles to determine which state's law governs what the Massachusetts insured was legally entitled to recover for accident in Quebec). Accordingly, I will apply Indiana's tort choice of law rules.

Under Indiana's choice of law principles for torts, the presumption is that the traditional *lex loci delicti* rule applies. Under this rule, the court applies the law of the place of the tort, the place where the last event necessary to make the actor liable for the alleged wrong takes place. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). This presumption can be overcome, however, if the place of the tort bears little connection to the legal action. *Id.* In that case, the court should consider other, more relevant contacts such as the place where the conduct causing the injury occurred, the residence or place of business of the parties, and the place where the relationship is centered. *Id.* The Indiana Supreme Court has cautioned that the place of the tort is rarely insignificant, *Simon*, 805 N.E.2d at 806. This is especially true in a car accident cases because the parties' conduct in operating the vehicle is governed by the laws of the place of the accident. *Id.* Consequently, Indiana courts have consistently enforced the *lex loci delicti* rule in car accident cases. *See Tompkins v. Isbell*, 543 N.E.2d 680, 682 (Ind. Ct. App. 1989); *Cox by Zick*, 690 N.E.2d at 751; *Brown v. Enterprise Leasing Co. Of Chicago*, No. 1:06-cv-872, 2007 WL 2900589 at *1 (S.D. Ind. April 19, 2007); *Patel v. Chriscoe*, No. 1:11-cv-0162-TWP-TAB, 2011 WL 2671221 at *2 (S.D. Ind. July 7, 2011).

Buckeye argues that the place of the tort, Alabama, is nonetheless insignificant here because this is an insurance case between Buckeye and the Roes and liability for the car accident

is not at issue.  This is beside the point.  The policy requires that Buckeye determine how much the Roes are entitled to as damages for the car accident.  In other words, how much could the Roes recover if they were to file a wrongful death suit against the driver that killed their son. The answer to this question doesn't depend at all on the relationship between Buckeye and the Roes.  It depends entirely on the incident that occurred in Alabama, and, since Alabama law governed the actions of the parties at the time of the accident, the place of the tort is significant. I therefore find that the substantive law of Alabama governs the Roes' claim for benefits under the policy.

Accordingly, Plaintiff's Motion for Summary Judgment [DE 21] is **DENIED** and Defendants Cross-Motion for Summary Judgment [DE 23] is **GRANTED**.

**SO ORDERED.**

Entered December 18, 2013

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT